UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Charles E. Davis, | : | Case No. 1:08CV0108 |
| | : | |
| Plaintiff | : | Judge Patricia A. Gaughan |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | |
| | : | **REPORT AND RECOMMENDED** |
| Defendant | : | **DECISION** |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§423(d)(1), 1383c(a). The programs differ with regard to other qualifying criteria. The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security. The SSI

program focuses on income and resources as basic eligibility factors.

Plaintiff applied for benefits on January 16, 1994, alleging an onset date of October 1, 1989. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "hydro-sepholis [sic], i.e. spinal bifida [sic]" and "I can not sit or stand for a certain amount of time.  It also effect my sex life."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested.  Evidentiary hearing, at which plaintiff was represented by counsel, was held on March 29, 2007.  Also testifying at that proceeding were a medical expert, Dr. Donald Kendrick, and a vocational expert, Dr. Richard Oestreich.

When asked by the ALJ to state the reasons why he is unable to work the plaintiff first responded that he is unable to stand for long periods of time, which he attributed to "my spinal bifida, which they claim it called hydrocephalus."  He acknowledged that he had suffered from that disorder since he was a child.  When asked about "any other medical conditions" the plaintiff replied "Well, I'm, my memory is, man, I don't have no memory at all.  I think the only time I can remember something is if someone just continually talk about it."  When asked if he was being treated for any other mental conditions the plaintiff stated that he was depressed, but that he had declined to see any doctors, instead choosing to go to church with his family and because he had no one to talk to "I just went on and started smoking marijuana like it was my best friend."  He then stated that he had stopped using marijuana in 2005, but that he was still depressed because of his divorce and "I would like to find me a doctor that would deal with this because I'm, I been out to the center with other people, I really don't like the center because it, it's kind of scary being amongst

all other people who has worser problems then I do." In discussing his alleged depression the plaintiff focused on his lack of sexual capability. He did, however, maintain that he could not follow even simple rules, stating "If you told me, no, because after the first thing you tell me I'm lost. If I go off and you'd say, say you ask me to go wash the walls down if I was a custodial type of job. You ask me to go wash the walls down and then you'll probably want me to mop the floor later in the midst of that, I would have to come back and ask unless you wrote it down for me. I would have to ask you that."

When questioned by his attorney the plaintiff returned to discussing his alleged physical limitations, testifying that he spends "every moment I can get" laying down, and that "If no one comes over to tell me to go to the store or take me out to the grocery store I'm, I'm in the house in the bed."

On July 5, 2007 the ALJ entered his opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on November 28, 2007.

The ALJ's "Findings," which represent the rationale of decision, were:

1. The claimant met the special requirement on all pertinent dates.

2. The claimant engaged in substantial gainful activity until approximately October 2003.

3. The claimant has severe impairments best described as congenital hydrocephalus and spina bifida, status-post shunt procedure in infancy; a history of a seizure disorder; a mild major depressive disorder and a history of substance abuse but that his impairments, alone or in combination, do not meet or equal the level of severity in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4.

4. The claimant has the residual functional capacity to stand one hour

>    at a time or a total of two hours in an eight-hour workday, sit one hour at a time or a total of six hours in an eight-hour workday and lift and carry 10 pounds occasionally and five pounds frequently. He can occasionally bend, climb stairs, and squat but should avoid working at heights or dangerous machinery and should avoid climbing ropes or ladders. He has no significant limitations in his ability to understand and remember, sustain concentration and persist at tasks, and to interact socially.
>
> 5. The claimant has no past relevant work experience.
>
> 6. At 42 years of age, the claimant is considered a younger individual.
>
> 7. The claimant has a limited education.
>
> 8. Considering the claimants vocational profile together with his residual functional capacity, within the framework of Rule 201.24 and based on the testimony of the vocational expert, the claimant is able to make a vocational adjustment to unskilled sedentary work existing in significant numbers in the national economy.
>
> 9. The claimant was not under a disability within the meaning of the Social Security Act at any time through the date of this decision.

In reaching these conclusions the ALJ found the plaintiff not to be credible. In his "Evaluation of the Evidence" the ALJ stated:

> To say that the claimant's testimony and statements regarding the severity of his impairments was not credible is an understatement. The medical evidence does establish that the claimant had a congenital problem. But there is really very little in the way of objective medical evidence to support most, if not all of the claimant's complaints. He complained bitterly at the hearing of severe back pain, which he stated was at a "10" on a scale of 1-10 during the hearing. Yet, he testified without any noted distraction, which would be expected from a individual experiencing overwhelming pain and/or other discomfort. Careful review of the record reveals several hints indicating that the claimant is not nearly as limited as he would have one believe. When he went to the emergency room for complaints of severe back pain in May 2004, he had a normal physical examination, and despite his lack of performance on muscular testing, he was observed walking back and forth to use the telephone without a limp, instability or evidence of

gross balance problems or focal weakness. No one other than Dr. Lai comment on what Dr. Lai characterized as spasticity. The claimant's statement that he does not use ambulatory aids but walks with the help of friends lacks any credibility whatsoever. When he was first seen at the Mansfield Health Department, he readily acknowledged that he needed a physician to tell Social Security that he was unable to work. This statement tells volumes regarding the claimant's motivation to exaggerate his complaints so as to achieve his goal of being found disabled. When he was seen in follow-up three weeks later, he complained of back and leg pain for one year but then later said that he had back and leg pain his entire life. During that visit he was noted not to be in acute pain except when the physician started to examine him, at which time he complained of severe pain when doing any movement at all. Nevertheless, it was noted that after the examination the claimant ambulated quickly down the hall to the discharge desk with no difficulty noted with ambulation or gait (Exhibit 49-F). The claimant takes no prescription medication, despite his complaints of severe and debilitating pain. All of the evidence of record is related to the claimant's attempt to provide support for his claim; he has had no actual medical treatment for either his back pain, his claimed seizures, or his alleged mental impairment.

The claimant appears to have been, at least, inconsistent but at worst deceptive, regarding his drug use. When he was examined by Dr. Schonberg in April 2004, he admitted smoking marijuana and stated that he used crack cocaine almost daily for five years. In other examinations and evaluations he denied drug use. However, in connection with an evaluation at the Third Street Family Health Center on May 10, 2006, it was noted that he was using marijuana and crack "currently." At the hearing, he did not discuss his history of crack cocaine usage, but stated that he had stopped using marijuana in 2005. The marked inconsistencies in the claimant's statements regarding his drug usage seriously undermine his overall credibility.

Finally, the evidence regarding a seizure disorder is so contradictory that it too adversely impacts on the claimant's credibility. The examination by a neurologist was entirely normal, as was an EEG. The physician stated that the claimant's episodes may be nonepileptic. When he filed his claim no mention was made of any seizure disorder. this "problem" was not raised by the claimant until after his claim was already denied. He received a prescription for Dilantin in October 2005, because he stated that he had a seizure one

5

> month earlier. However, the marked inconsistency in his statements does not support that claim. Indeed, his true motivation was to get a statement from a physician that he was unable to work, which yielded the obviously incorrect statement from the physician that the claimant had "uncontrolled" seizures (Exhibits 29-F and 43-F).

On this appeal plaintiff's counsel does not question the ALJ's determination that the plaintiff's subjective complaints as to his physical limitations were not credible, nor is the ALJ's holding that in general the plaintiff was not a credible witness challenged. The only issues raised are that the ALJ erred in not finding that the plaintiff suffered from non-exertional, i.e., mental, limitations, with the related claim that the ALJ erred in not including in his hypothetical question to the vocational expert the factor of non-exertional limitations.

This Court's response to these positions concerning alleged non-exertional limitations is that either they are an afterthought, the plaintiff having failed to sell to the ALJ his claim of extreme exertional limitations, or that plaintiff's's counsel did a dismal job of creating/protecting the record for judicial review at the evidentiary hearing.

At that hearing, when asked by the ALJ to opine on the question of the plaintiff's residual functional capacity, the medical expert did not identify any non-exertional limitation. When given the opportunity to examine the doctor plaintiff's counsel did not ask a single question concerning the plaintiff's professed mental limitations, his entire rather limited examination pertaining to the plaintiff's alleged physical impairments/limitations.

In questioning the vocational expert the ALJ asked him "to assume an individual with the limitations identified by the medical expert, further ask you to assume an individual with the limitations identified by Dr. Becker, Exhibit 17F." Dr. Becker was a consulting psychiatrist who evaluated the plaintiff in March 2005, and his conclusions were:

1. Results of Psychological Evaluation suggest that Charles Davis currently meets criteria for a diagnosis of Mild Major Depression. He indicated that his depression is a function of his current financial status and his inability to maintain employment in order to support himself. Mr. Davis indicated that he has never been previously diagnosed or treated for depression.

2. On the WAIS-III, Mr. Davis obtained a Full Scale IQ of 85, Verbal IQ of 84, and Performance IQ of 87. These scores all fall within the Low Average Range and indicate that he is functioning in the 16th percentile. These scores would appear to indicate that Mr. Davis does not exhibit intellectual deficits that would significantly impair his ability to obtain and maintain employment. However, review of Subtest Scaled Scores suggest that he does have some deficits in mental processing, short term memory, processing speed, and deficits in ability to work in a time limited situation. These scores suggest that Mr. Davis would most likely function better at a job in which he is able to work at his own pace. He also would perform best at a repetitive type task with little need for problem solving or decision making.

3. Results of Psychological Evaluation provide no evidence that Mr. Davis is currently impaired from a psychological standpoint, to an extent that would preclude him from obtaining and maintaining gainful employment.

4. Mr. Davis should be referred to an appropriate mental health professional to obtain necessary treatment for his depressive symptoms.

5. Mr. Davis should be referred to an appropriate medical professional to determine that extent of his reported hydrocephalus and spina bifida. This medical professional could provide appropriate diagnosis and treatment as well as making a determination of the impact on these conditions on Mr. Davis' ability to obtain and maintain gainful employment.

In his examination of the vocational expert plaintiff's counsel did not ask Dr. Oestreich to assume that the plaintiff suffered from any non-exertional limitations beyond those reflected in Dr. Becker's report. It is very difficult to find that the ALJ erred in failing to present the vocational expert with a hypothetical question which plaintiff's counsel could have asked of the witness, but

did not do so.

The simple fact is that the ALJ specifically held that Dr. Becker's report was the most reliable evidence before him bearing upon the plaintiff's mental/emotional state.  This being so, it cannot be said that the ALJ erred in incorporating Dr. Becker's findings into his hypothetical question to the vocational expert.

As this Court finds no merit in plaintiff's arguments on this appeal, it is recommended that final judgment be entered in defendant's favor.


                                                                    s/DAVID S. PERELMAN
                                                                    United States Magistrate Judge


DATE:    January 6, 2009


**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).